# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
EILISE MORIARTY, a minor,      \*
by her parents and natural guardians,      \*
MARIE LOUISE and      \*    No. 03-2876V
STEPHEN MORIARTY,      \*    Special Master Christian J. Moran
           Petitioners,      \*
     \*    Filed: December 16, 2016
v.      \*
     \*    Interim attorneys' fees and costs,
SECRETARY OF HEALTH      \*    minimum hourly rate
AND HUMAN SERVICES,      \*
     \*
           Respondent.      \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Clifford J. Shoemaker, Shoemaker, Gentry & Knickelbein, Vienna, VA, for petitioners;
Alexis B. Babcock, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION AWARDING
ATTORNEYS' FEES AND COSTS ON AN INTERIM BASIS[1]**

       Marie Louise Moriarty and Stephen Moriarty claim that a vaccination harmed their daughter, Eilise, and seek compensation through the National Childhood Vaccine Injury Compensation Program, 42 U.S.C. § 300aa–10 through 34 (2012). While their claim is presently before the Court of Federal Claims on a motion for review, the Moriartys are requesting an award of attorneys' fees and costs on an interim basis. The Moriartys' request totals approximately $200,000.00. The Secretary filed a weak response, maintaining that an appropriate

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

amount for a case with a level of complexity similar to the one at hand falls into the range of $105,000 to $140,000.

The Moriartys are awarded $116,499.92 as an irreducible minimum. As explained below, this award serves to provide some reimbursement to the petitioners and their attorneys, who have been working on this case for more than a decade. It is highly likely that after petitioners adequately justify the amounts that they are requesting (especially with regard to the proposed hourly rates for the attorneys), the amount finally awarded to the petitioners will be increased. The Moriartys are encouraged to file a more detailed request for fees and costs at the end of the proceedings.

## **Background**

### Facts

Before she was five years old, Eilise was diagnosed with developmental delays. She received special education services, which improved her functioning. Eilise received her second mumps-measles-rubella ("MMR") vaccine on January 2, 2001.

Within a month of this vaccination, Eilise started to have seizures and was diagnosed with epilepsy. The Moriartys claim that the MMR vaccine caused Eilise's epilepsy. The Secretary disputes this claim, arguing that the evidence fails to show that Eilise suffered an autoimmune reaction.

### Procedural History

Before the Moriartys filed their motion for an award of attorneys' fees and costs on an interim basis, the case had been pending for more than 12 years. During this period, the case has been litigated in the Office of Special Masters, the Court of Federal Claims, the Court of Appeals for the Federal Circuit, and back to the Office of Special Masters on remand. The following is a brief summary of that history.

**Office of Special Masters.** On December 31, 2003, the Moriartys filed a "Short-Form Autism Petition for Vaccine Compensation." With the Moriartys' consent, and in accord with how the thousands of other autism cases were managed, adjudication of this case was stayed pending the outcome of the omnibus autism proceeding. Order, filed Feb. 2, 2004. Once the test cases in the omnibus autism proceeding were resolved, the Moriartys were ordered to move their case forward by filing medical records. Order, filed June 14, 2011.

The medical records revealed that the original petition's claimed injury (that Eilise suffered from autism) was erroneous. Eilise has not been diagnosed with autism. Consequently, the Moriartys filed an amended petition, alleging that the MMR vaccination caused her to suffer seizures. Am. Pet., filed July 13, 2011, ¶ 10.

Both the Moriartys and the Secretary retained experts to support their positions. The Moriartys relied upon Yuval Shafrir, a board-certified neurologist. The Secretary relied upon John MacDonald, another board-certified neurologist.

The case proceeded to a hearing. The Moriartys and the Secretary filed post-hearing briefs. The Moriartys were found not entitled to compensation. Entitlement Decision, 2014 WL 4387582 (Fed. Cl. Spec. Mstr. Aug. 15, 2014).

For the work their attorneys performed before the Office of Special Masters, the Moriartys requested $89,416.25 in attorneys' fees. In addition, almost all costs were incurred before the Office of Special Masters.

**Court of Federal Claims.** The Moriartys filed a motion for review with the Court of Federal Claims. On review, the Moriartys argued that in finding they failed to prove both the first and second prongs required by Althen v. Sec'y of Health & Human Servs., 418 F.3d 1275, 1278 (Fed. Cir. 2005), the special master imposed a burden of proof beyond the preponderance of evidence standard specified by the Vaccine Act. The Court denied the motion for review, finding that the special master set forth a rational basis for his decision, and was neither arbitrary nor capricious. 120 Fed. Cl. 102, 103 (2015).

For proceedings at this stage, the Moriartys seek $26,926.50 in attorneys' fees, but minimal, if any, costs.

**Court of Appeals for the Federal Circuit.** The Moriartys appealed the judgment denying them compensation to the Court of Appeals for the Federal Circuit. The Federal Circuit concluded that the special master had erred by failing to consider relevant scientific evidence contained in the record, and remanded for further proceedings consistent with the opinion. 643 F. App'x 997, 998 (Fed. Cir. 2016).

The Moriartys request approximately $40,000 for the work their attorneys performed with respect to the Federal Circuit appeal, plus a relatively small amount of costs.

**Office of Special Masters on Remand.** On remand, the Moriartys were directed to file additional medical records, school records, and supplemental briefs. Order, filed June 14, 2016. After a re-review of the record, the undersigned again found that the Moriartys had failed to prove that they were entitled to compensation.[2] 2016 WL 5390172 (Aug. 23, 2016).

While on remand, on September 4, 2016, the Moriartys filed an amended motion for an award of attorneys' fees and costs on an interim basis, requesting $203,845.17. The components of this requests are:

| Attorneys' Fees | $183,162.30 |
| --- | --- |
| Attorneys' Costs | $20,682.87 |
| Petitioners' Costs | $1,250.00 |

In response to the request for an interim award, respondent argued that a reasonable amount of attorneys' fees and costs for a case with this complexity would fall between $105,000.00 and $140,000.00. But, the Secretary did not challenge that the Moriartys were eligible for an interim award.

In the Vaccine Program, petitioners who have not received compensation are eligible for an award of attorneys' fees and costs when "the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa—15(e)(1). Here, the reports from Dr. Shafrir satisfy the reasonable basis standard. In addition, the Moriartys brought their petition in good faith.

Furthermore, an award of attorneys' fees and costs may be made on an interim basis. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008) (listing factors). Here, the protracted nature of this litigation support an interim award to the Moriartys.

The remaining question — the one the parties disputed in their briefing — is the reasonable amount of attorneys' fees and costs. This question is ready for adjudication.

---

[2] The Moriartys filed another motion for review. However, that second motion for review is independent of the pending motion for attorneys' fees and costs on an interim basis.

# ANALYSIS

In their amended motion, the Moriartys are currently seeking $183,162.30 in attorneys' fees. The total costs (petitioners' costs plus attorneys' costs) are $21,932.87. Pet'r's Am. Fee Appl'n at 1. These two components are addressed separately.

## I.     **Attorneys' Fees**

### A.     **Standard for Adjudication: Determining the Lodestar**

To determine a reasonable amount for attorneys' fees, special masters follow a two-step process. The initial step is determining a lodestar value, multiplying a number of hours reasonably expended on the litigation times a reasonable hourly rate. See Avera, 515 F.3d at 1347-48. The second step is adjusting the lodestar calculation upward or downward. Id. at 1348. Here, increasing or decreasing the lodestar is not necessary. Therefore, the analysis below focuses on determining the lodestar by finding a reasonable hourly rate and a reasonable number of hours.

### B.     **Reasonable Hourly Rate**

In the lodestar analysis, "a reasonable hourly rate is the 'prevailing market rate,' defined as the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Avera, 515 F.3d at 1348 (quoting Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984)). In Avera, the Federal Circuit authorized an award of attorneys' fees based upon the prevailing rate in the forum. Counsel for petitioners are entitled to Washington, D.C. rates except "'where the bulk of [an attorney's] work is done outside the jurisdiction of the court and where there is a very significant difference in compensation favoring D.C.'" Avera, 515 F.3d at 1349 (quoting Davis County Solid Waste Management and Energy Recovery Special Service District v. United States Environmental Protection Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).

The Avera framework, therefore, requires a three-step process for attorneys who work outside of Washington, DC. First, a reasonable hourly rate for comparable attorneys performing comparable work within Washington, DC must be found. Second, a reasonable hourly rate for the attorneys in their local area must be found. Third, the two hourly rates must be compared to see whether there is a very significant difference. Masias v. Sec'y of Health & Human Servs., No. 99-697V, 2009 WL 1838979, at *4 (Fed. Cl. Spec. Mstr. June 23, 2009), mot. for rev. denied, slip op. (Dec. 10, 2009), aff'd, 634 F.3d 1283 (Fed. Cir. 2011), corrected, 2013 WL 680760 (Fed. Cl. Spec. Mstr. Jan. 30, 2013).

5

Here, the Moriartys seek compensation for work performed by three attorneys (Clifford Shoemaker, Renee Gentry, and Sabrina Knickelbein). The attorneys began working on this case in 2003, although not all attorneys worked in all years. Depending on the year the work was performed, for Mr. Shoemaker, the Moriartys propose rates starting at $278 per hour and increasing to $415 per hour. For Ms. Gentry, the Moriartys ask for rates from $251 per hour to $415 per hour. Finally, for Ms. Knickelbein, the Moriartys request between $225 per hour and $363 per hour. The Moriartys supplied no information explaining how these hourly rates were determined.[3]

An investigation reveals that the proposed rates exceed rates special masters have awarded in published decisions. For example, in Ray v. Sec'y of Health & Human Servs., No. 04-184V, 2006 WL 1006587, at *9-10, *13 n.9 (Fed. Cl. Spec. Mstr. Mar. 30, 2006), the then-chief special master found the following hourly rates reasonable for these particular attorneys:

|         | Clifford Shoemaker | Renee Gentry | Sabrina Knickelbein |
|---------|--------------------|--------------|---------------------|
| 2003-04 | $225               | $165         | n/a                 |
| 2004-05 | $235               | $175         | $155.25             |
| 2005    | $245               | $185         | n/a                 |

Thus, it appears that the proposed rates cannot be accepted automatically as they are inconsistent with previous decisions.[4]

A thorough analysis to determine a reasonable hourly rate for three attorneys for approximately 12 years is likely to be a time-consuming process. While special masters frequently find another special master's findings regarding hourly rates to be reasonable, the Moriartys have not cited any cases to support their proposed hourly rates. Thus, there is a gap in the Moriartys' presentation. This gap is even more noticeable because these attorneys, who frequently represent petitioners in the Vaccine Program, have litigated their hourly rates in other cases.

---

[3] For example, it is not clear whether the Moriartys are requesting forum rates or local rates.

[4] This same investigation also reveals that some cases support the proposed hourly rates. E.g. Jaffri v. Sec'y of Health & Human Servs., No. 13-484V, 2016 WL 7319407 (Fed. Cl. Spec. Mstr. Sept. 30, 2016). The discrepancy further supports the need for additional comments from both parties.

Fortunately, there is a solution to this problem. In an exercise of discretion, the undersigned will compensate the attorneys at a low hourly rate now in this decision awarding attorneys' fees on an interim basis with an expectation that the Moriartys will present information, evidence, and argument regarding reasonable hourly rates in a future fee application.

Several factors support awarding some minimal amount of attorneys' fees now. First, the case has been pending approximately 13 years during which the attorneys have not been compensated. The duration of this case is anomalous, making it an appropriate case to award attorneys' fees and costs on interim basis. Second, the amount requested in attorneys' fees (more than $100,000) is, by the standards in the Vaccine Program, relatively large. Third, the case seems unlikely to resolve soon making an interim award more appropriate.[5] Fourth, although the Moriartys could be ordered to justify their request for attorneys' fees now, the undersigned believes that a more expeditious path to compensating the attorneys quickly is to use experience to estimate some reasonable amount of compensation. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (authorizing special masters to use their experience in resolving disputes over attorneys' fees and costs).

For purposes of finding some minimal hourly rate, the undersigned will use the rates from Ray for the beginning years of this litigation:

|      | Clifford Shoemaker | Renee Gentry | Sabrina Knickelbein |
|------|--------------------|--------------|---------------------|
| 2003 | $225               | $165         | $155                |
| 2004 | $235               | $175         | $155                |
| 2005 | $245               | $185         | $155                |

For years 2006-16, Mr. Shoemaker will be compensated at $250 per hour. It bears emphasis that the $250 per hour is an initial interim award. After the Moriartys submit additional information as part of a request for final fees, Mr.

---

[5] As mentioned in the procedural history, the case is pending the Court of Federal Claims on a second motion for review. The Court may (a) deny the motion for review, setting up a possible second appeal to the Federal Circuit, (b) grant the motion for review by vacating the undersigned's second entitlement decision and remanding for additional consideration regarding entitlement, or (c) grant the motion for review by reversing the entitlement decision and remanding for findings regarding compensation.

Shoemaker will, most likely, be compensated at a higher rate adjusted for inflation. The present decision, however, does not adjust for inflation because the parties should present arguments about what index should be used.

After 2004, Ms. Gentry resumed working on this case in 2012. For her work in 2012 through 2016, Ms. Gentry is being compensated at a rate of $200 per hour. Again, this rate is likely to be increased as part of a final award, provided the Moriartys present some persuasive justification for an hourly rate exceeding $200 per hour from 2012 through 2016.

Most of Ms. Knickelbein's work took place in 2011 and 2013. For these years (and all years), she is being compensated at the rate of $155 per hour. This rate of compensation is appropriate because the work she performs is work that a paralegal can perform. Reasoned decisions of special masters have compensated Ms. Knickelbein at rates closer to paralegal rates, and appellate authorities have endorsed these decisions. Riggins v. Sec'y of Health & Human Servs., No. 99-382V, 2009 WL 3319819, at *20-21 (Fed. Cl. Spec. Mstr. June 15, 2009) (compensating Ms. Knickelbein at a rate of $105 per hour), mot. for rev. denied on non-relevant grounds, slip op. (Dec. 10, 2009), aff'd on non-relevant grounds, 406 F. App'x 479 (Fed. Cir. 2011); Valdes v. Sec'y of Health & Human Servs., No. 99-310V, 2009 WL 1456437, at *4 (Fed. Cl. Spec. Mstr. Apr. 30, 2009), mot. for rev. denied in part and granted in part, 89 Fed. Cl. 415, 425 (2009) (stating that special master was not arbitrary in finding that Ms. Knickelbein performed paralegal work, but noting that Ms. Knickelbein should have been compensated at paralegal rates). As part of the Moriartys' submission for final fees, they may present additional information, evidence, and argument about a reasonable hourly rate for paralegals.

With the finding of a reasonable hourly rate for the purpose of making an interim award, the first step in the lodestar calculation is accomplished. The second step is to determine a reasonable number of hours.

### C. Reasonable Number of Hours

Quoting a decision by the United States Supreme Court, the Federal Circuit has explained some of the limits on the number of hours for which compensation may be sought:

> The [trial forum] also should exclude from this initial fee calculation hours that were not "reasonably expended."... Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are

> excessive, redundant, or otherwise unnecessary, just as a
> lawyer in private practice ethically is obligated to
> exclude such hours from his fee submission. "In the
> private sector, 'billing judgment' is an important
> component in fee setting. It is no less important here.
> Hours that are not properly billed to one's **client** also are
> not properly billed to one's **adversary** pursuant to
> statutory authority."

Saxton, 3 F.3d at 1521 (emphasis in original) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

Here, the Moriartys rely upon the attorneys' timesheets as the basis for the number of hours. The timesheets show that in the 13 years of litigation, Mr. Shoemaker spent 256.95 hours, Ms. Gentry 171.35 hours, and Ms. Knickelbein 45.70 hours.

However, the entries on the timesheet often contain an insufficient amount of information to assess the reasonableness of the activity. Many entries, frequently from Mr. Shoemaker, contain five or fewer words, such as "Review file and email Sabrina" (7/12/2011) or "Review records received" (9/26/2011). In light of the lack of specificity in the time records, the undersigned uses his discretion and experience to reduce the time spent by 10 percent.[6]

The result of the lodestar calculation is $94,824.00.

## II. Costs

In addition to seeking an award of attorneys' fees, the Moriartys seek reimbursement for costs that either they ($1,250) or their attorneys ($20,682.87) have incurred. Of the various items comprising all those costs, only one is excluded.

The one item that the Moriartys have not justified is $256.95 to stay at the Sofitel Hotel before the Federal Circuit oral argument. Because their attorney lives

---

[6] The choice to reduce the number of hours by ten percent is not likely to change. Unlike the finding for a reasonable hourly rate on which an updated finding is anticipated, the finding for the number of hours probably will remain in the determination of final fees. The attorneys probably cannot provide better information today about their activities that took place years earlier. If the attorneys have better information, then they should have submitted it with the invoices.

relatively close to Washington, DC, where the Federal Circuit held argument, alternatives to staying in a relatively expensive hotel were available. The attorney has not explained why a paying client would pay this cost.

The remaining items, including Dr. Shafrir's invoice, are reasonable and adequately documented. The Moriartys are awarded their costs personally incurred ($1,250). The Moriartys are also awarded $20,425.92 in attorneys' costs.

## Conclusion

An interim award of attorneys' fees and costs is appropriate at this time. The Moriartys are awarded $94,824.00 in attorneys' fees and a total of $21,675.92 in costs.

Accordingly, the award shall be paid as follows:

a. **A lump sum of $115,249.92 in the form of a check made payable to petitioners, and Clifford Shoemaker, of Shoemaker, Gentry & Knickelbein, for interim attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e).**

b. **A lump sum of $1,250.00, payable to petitioners, Marie Louise and Stephen Moriarty, for costs they incurred in pursuit of their petition.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

S/ Christian J. Moran
Christian J. Moran
Special Master